IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


TIMOTHY PETER BAKER,                    :

      Plaintiff,                            :

vs.                                     :       CA 09-0036-CG-C

JANET NAPOLITANO, Secretary            :
United States Department of Homeland
Security,                               :

      Defendant.


## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on the complaint (Doc. 1), the motion to dismiss filed by defendant Janet Napolitano (Doc. 7; *see also* Doc. 8), plaintiff's response (Docs. 13-14), and the defendant's reply (Doc. 20). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **GRANT** the motion to dismiss and dismiss this action since there is no basis upon which this Court may exercise subject-matter jurisdiction.

## FINDINGS OF FACT

1.     Plaintiff filed a complaint in this Court on January 20, 2009, seeking to declare null and void the June, 2007 Settlement Agreement entered into by the parties and requesting the following relief: "All pay, benefits, allowances, and possible promotions he could have received from November 4, 2004 through present date, correction of all official records connected hereto, leave to reinstate/file all ADA/EEOC actions, plus attorney fees, cost[s], and damages (compensatory & punitive) to be fixed by a jury. Any prior payment(s) by the Defendant is(are) to be applied against any award resulting here from." (Doc. 1, at 3)

2.     The Settlement Agreement which plaintiff seeks to have declared null and void was reached following Baker's successful arbitration of his removal as a Physical Security Specialist/Law Enforcement Security Officer with the Department of Homeland Security. (*See* Doc. 8, Exhibit 1, OPINION AND AWARD OF THE ARBITRATOR) On September 5, 2006, the arbitrator, Joseph M. Sharnoff, mitigated the removal to a 15-day suspension. (*See id.* at 53)

> Based on all of the above considerations and findings, the Arbitrator concludes that the removal action constituted harmful error, within the meaning of Article 30, Section 10, and 5 U.S.C. 7701(c)(2), that the penalty of removal has not been

demonstrated to have been reasonable or in the interest of the efficiency of the Federal service and that, therefore, the removal penalty must be rescinded by the Agency, with a 15-day disciplinary suspension issued instead for the misconduct which has been found to have been demonstrated. For the reasons discussed below, the removal of the Grievant, in all of the circumstances, is found to have constituted an unwarranted personnel action under the Back Pay Act which is subject to the remedial relief of back pay, including appropriate reasonable attorney fees. [T]he Agency hereby is directed to rescind the removal of the Grievant and to reduce the penalty for the misconduct found from a removal to a 15-day disciplinary suspension without pay. The Agency is directed to offer to the Grievant reinstatement to the official position he held at the time of his removal - in a different Region of the FPS and with appropriate travel and relocation expenses - with all of the rights and benefits attendant thereto as if he had been suspended for 15[]days but not removed from the FPS. The Agency is to make the Grievant whole for all losses attributable to the Agency's improper removal action, less the 15-day disciplinary suspension. All records concerning the removal action are to be withdrawn from all appropriate files maintained by the Agency. Any documents, with appropriate supporting materials, prepared by the Agency related to the 15-day disciplinary suspension may be substituted in appropriate files for the withdrawn documents related to the improper removal action. The Grievant is to be returned, to the extent possible, to the status quo ante, and remains subject to meeting all applicable requirements for achieving the full-performance level of his official position of Physical Security Specialist, Law Enforcement Security Officer, GS-11, including: completion of all aspects of regularly required FLETC training, including the Mixed Basic Police Officer Training Program; meeting all physical requirements of his position.

In the event that, due to the injuries sustained during his attendance at FLETC in 2003, the Grievant is unable to meet the physical requirements of the FLETC training program and/or the

physical requirements of the full-performance Physical Security Specialist, Law Enforcement Security Officer position, representatives of the Agency, the Union and the Grievant are directed to attempt to reach settlement on an alternative position for the Grievant which is consistent with his background, experience, training, physical ability and reasonable career/grade expectations comparable to those of his official position. The Agency and the Union also are directed to attempt to resolve all issues concerning the amount of appropriate attorney fees. If the Parties are unable to do so within a reasonable time, not to exceed 45 days, the Union may submit to the Arbitrator, for resolution, a request for reasonable and appropriate attorney fees, to which submission the Agency will have a reasonable opportunity to respond. The Arbitrator hereby retains jurisdiction for the limited purpose of resolving any disputes concerning the remedial relief granted herein, including any disputes concerning appropriate and reasonable attorney fees.

(*Id.* at 53-54)

3.    The parties then engaged in settlement negotiations which culminated in the following  June, 2007 Settlement Agreement:

**1.    In exchange for the promises of the American Federation of Government Employees (the Union) and Timothy Baker (the Grievant) in paragraph 2 of this Agreement, Immigration and Customs Enforcement (the Agency) hereby agrees:**

**a.    To pay a lump sum settlement of two hundred and ten thousand dollars ($210,000) in complete satisfaction of any and all claims arising from or related to the above-referenced grievance regarding the Grievant's removal from federal service on November 4, 2004, PNCS Case No. 05-56025, including but not limited to attorneys' fees, back pay, contributions, and accrued leave. Said monetary amount**

4

shall be paid by two separate electronic funds transfers in the amounts of one hundred, fifty-two thousand ($152,000.00) to the law firm of Snider and Associates and fifty-eight thousand dollars ($58,000) to the Grievant within 30 calendar days of the date of [the] last signature on this agreement.

b.    To reinstate the Grievant on paper to the position of GS-080-11 Physical Security Specialist/Law Enforcement Security Officer [] retroactively from the date of his removal, November 4, 2004 until June 24, 2007, with all within grade increases in accordance with 5 CFR §531, Subpart D. The Agency agrees that it will determine that the Grievant's performance was at an acceptable level of competence, per 5 CFR §531.404(a), and will not take any action to deny a within grade increase for which the Grievant has met the requisite waiting period on paper. The Agency will include the time period of November 4, 2004 to June 24, 2007 in calculating and reporting the Grievant's years of federal service.

c.    To expunge all references to the November 4, 2004 removal action from the Grievant's Official Personnel File ("OPF"). No SF-50 or other documents in the Grievant's OPF will contain any references to the original proposed or effected removal for misconduct.

d.    Not to implement that portion of the arbitrator's award in the above-referenced grievance which orders the Agency to suspend the Grievant for 15 calendar days in lieu of the removal action.

e.    To issue a proposal notice and a final decision, removing the Grievant from federal service effective June 24, 2007 for medical inability to complete mandatory training and to perform the full range of duties of his position. Such proposal and removal letters are attached hereto and incorporated herein.

5

  **f.**  To retain the arbitration file and this settlement agreement in the Agency's Office of Employee and Labor Relations and Principal Legal Advisor in a separate file in the event of future litigation or inquiries.

  **g.**  With respect to the Grievant's intended application for disability retirement through the Office of Personnel Management (OPM), the Agency will:

    **i.)**  Complete all required portions of the Grievant's application for disability retirement based on the information currently available to the Agency, to include Office of Workers' Compensation (OWCP) records, personnel files, and Federal Law Enforcement Training Center (FLETC) records.

    **ii.)**  State that the Grievant sustained on the job injuries in October of 2003 during FLETC training and has been unable to perform the essential functions of his position since October of 2003.

    **iii.)**  Provide the Grievant with the OPM disability retirement Agency Certification of Reassignment and Accommodation Efforts form (SF 3112D) with those boxes checked which indicate that "the medical evidence presented to the agency shows that accommodation is not possible due to severity of medical condition and the physical requirements of the position" and "reassignment is not possible." A copy of the SF 3112D is attached hereto and incorporated herein.

    **iv.)**  Provide the Appellant with the OPM disability retirement Supervisor's

Statement form (SF 3112B), indicating, where applicable, that the Appellant's performance has been fully successful on the critical elements of his job that he has been able to perform, that his conduct has been satisfactory, and that accommodation is not possible due to the severity of his medical condition and the physical requirements of the position. A copy of the SF 3112B is attached hereto and incorporated herein.

h.     The Agency agrees that for purposes of the Agreement to Remain in Federal Service, the Grievant is being separated for reasons beyond his control and acceptable to the Agency as per paragraph 1. The Grievant did not resign, vacate his position without authority or get removed for cause as set forth in paragraph 2 of the Agreement to Remain in Federal Service.

i.     The Agency will issue the Grievant non-law enforcement credentials with the title Security Specialist, which will be stamped in red and punched with the words "cancelled".

j.     The Agency will change the Grievant's Absence Without Leave Status from March 19 through April 25, 2007 to Leave Without Pay Status.

2.     In exchange for the promises made by the Agency in paragraph 1 of this Agreement, the Grievant and the Union agree:

a.     To withdraw with prejudice all pending complaints, appeals, and grievances of any kind against the Agency in whatever form filed, including[,] but not limited to[,] FMCS Case No. 05-56025; EEOC No. 140-2005-00490X, ICE-05-2052; and Agency Case No. ICE-04-2098.

7

**b.** That the Grievant will not seek, apply for, or accept employment with any component of Immigration and Customs Enforcement or the Department of Homeland Security at any time in the future.

**c.** Not to file or pursue any inquiries, investigations, appeals, complaints, grievances, or lawsuits against the Agency or the United States in any forum relating to or arising out of any aspect of the Grievant's employment with the Department of Homeland Security or his separation therefrom or the complaints, appeals, and grievances referenced in paragraphs 1a and 2a.

**d.** Not to institute a lawsuit under the Civil Rights Act of 1964, Title VII, as amended, under the Rehabilitation Act, under the United States Constitution or under any other state or Federal law relating to or arising from any aspect of the Grievant's employment with the Department of Homeland Security or his separation therefrom, or the complaints, appeals, and grievances referenced in paragraphs 1a and 2a.

**e.** To waive any claims for damages associated with the complaints, appeals, and grievances referred to in paragraphs 1a and 2a and with his retroactive reinstatement referred to in paragraph 1b, including but not limited to back pay, front pay, travel pay, severance pay, interest, attorney's fees, costs, payment for accrued leave, and compensatory damages.

**f.** To waive any right to file an appeal at the Merit Systems Protection Board or a complaint with the Equal Employment Opportunity Office, or to otherwise challenge the removal for inability to perform the duties of his position and complete mandatory training.

**g.** The Grievant and the Union acknowledge that the Grievant is physically unable to perform the duties of his

position as a FSS-LESO and that he will be unable to do so for the foreseeable future. Further, the Grievant and the Union acknowledge that he is unable to perform any other position to which he might be reassigned by the Agency. The Grievant acknowledges that he is physically unable to complete the mandatory training requirements of his job, specifically Mixed Basic Training at the FLETC.

3.     The Agency, the Union, and the Grievant further agree:

a.     That the Grievant will not be returned to employment with the U.S. Department of Homeland Security if the OPM does not approve his application for disability retirement. The parties acknowledge that the decision whether or not Grievant is authorized disability retirement lies solely with the OPM.

b.     That Agency officials will respond to any inquiries from OPM regarding the Grievant's disability retirement application based on the medical information currently within their custody and possession. It is the Grievant's responsibility to provide additional medication documentation to such officials, if he would like such officials to respond based on more complete and/or up-dated medical documentation.

c.     That this settlement does not represent an admission or acknowledgment by the Agency or the Grievant of any impropriety or wrongdoing and that the Agreement is made solely to compromise and settle all of the issues set forth in the grievance referenced in paragraph 1a above.

d.     That the terms of this Agreement will not establish any precedent, nor will this Agreement be used as a basis by the Grievant, the Union, or any representative to seek or justify similar terms in a subsequent case.

9

> **e.**     **That this Agreement may only be used as evidence in a later proceeding between the parties in which either of the parties alleges a breach of this Agreement or files a complaint, appeal or other action regarding the specific terms of this agreement. It may also be used by the Agency to enforce the provision relating to barment from employment with the Department of Homeland Security.**
>
> **f.**     **That this agreement will not be used in any future proceedings to establish what the Agency considers to be a reasonable hourly rate for attorneys' fees or a reasonable number of hours expended in this type of case.**
>
> **g.**     **That all parties represent and warrant that they have had adequate opportunity to consult with their own counsel, representatives and attorneys with respect to the terms of this Agreement.**
>
> **h.**     **The parties agree that this written settlement agreement represents the sum total of the promises made by each of the parties. Each of the undersigned parties is signing the agreement voluntarily having had the opportunity to read and raise questions about its meaning prior to signing.**

(Doc. 1, Settlement Agreement (emphasis in original))

4.     On January 6, 2009, an Administrative Judge with the Merit Systems Protection Board dismissed, without prejudice to refiling, Baker's appeal "to contest the September 3, 2008 reconsideration decision issued by the Office of Personnel Management (OPM) which concluded that the appellant had been overpaid disability retirement annuity payments in the amount of $24,786.08." (Doc. 8, Exhibit 2, at 2)

In addition to filing a grievance, the appellant also applied for disability retirement. OPM issued a reconsideration decision denying the appellant's application on February 28, 2007, and the appellant appealed this decision to the Board on April 1, 2007. While the appeal was proceeding before the Board, OPM notified the administrative judge that it was rescinding its reconsideration decision and granting the appellant's application, and the administrative judge therefore dismissed the appellant's appeal for lack of jurisdiction. During the period from July 1, 2007, through May 1, 2008, OPM paid the appellant estimated interim annuity payments totaling $40,760.00, but, when OPM actually calculated the annuity to which the appellant was due for the period from November 5, 2004 through April 30, 2008, OPM determined that the estimated payments exceeded the amount to which the appellant was due by $24,786.08. The appellant requested reconsideration of the existence and the amount of the overpayment, but, on September 3, 2008, OPM issued a reconsideration decision in which it determined that the overpayment amount was correct and that the appellant had failed to establish his entitlement to a waiver of the overpayment. OPM indicated that it intended to collect the overpayment by reducing his annuity by $118.02 for 210 months and by $1.88 for 1 month.

Upon receipt of OPM's reconsideration decision, the appellant filed the instant appeal in which he complained that, in computing the overpayment, OPM failed to account for the fact that he had been reinstated to his position pursuant to the terms of his settlement agreement with DHS. A hearing was scheduled, but, during the prehearing conference, the parties acknowledged that proper implementation of the settlement agreement, to include an amendment to the appellant's individual retirement record (IRR) to account for his reinstatement pursuant to the terms of the agreement, would likely affect OPM's annuity overpayment calculation. Accordingly, the parties indicated that they did not object to a dismissal of this appeal without prejudice to afford the appellant an opportunity to attempt to have DHS amend his IRR to reflect

the terms of the settlement agreement.

.   .   .

In this case, I find that a dismissal without prejudice would serve the interests of fairness and administrative economy by affording the appellant the opportunity to attempt to have his records amended to reflect the terms of his settlement agreement with DHS and by avoiding the adjudication of an OPM decision that may change significantly if the appellant is successful in his attempt to have DHS amend his IRR. As discussed during the prehearing conference, the Board has stated that, when determining whether OPM properly calculated a retirement annuity, its review is limited to determining whether OPM properly relied on the IRR. The IRR, as it currently exists in the record of this appeal, reflects the appellant's separation from Federal service effective November 4, 2004, but it does not reflect his reinstatement pursuant to the terms of his settlement agreement with DHS. An amendment of the appellant's IRR to reflect his reinstatement for the period of November 4, 2004, through June 24, 2007, would likely have a significant impact on OPM's calculations regarding the overpayment the appellant received.

Accordingly, this appeal is DISMISSED WITHOUT PREJUDICE to refiling by the appellant no later than July 6, 2009 (the day 6 months from the date of this decision).

(*Id.* at 2-3 (internal citations and footnotes omitted))

5.      Either in conjunction with getting DHS to amend his IRR, or in lieu thereof, plaintiff, as aforesaid, filed his complaint in this Court on January 20, 2009, requesting that the June, 2007 settlement agreement he entered into with the Department of Homeland Security be declared null and void. (Doc.

12

1) It is clear to the undersigned that the OPM's determination that there had been an overpayment of annuity disability benefits to plaintiff was the event which sparked the filing of the instant complaint. (*See* Doc. 1, at 3 ("The preceding factors have caused the Plaintiff's Federal Employee's Retirement System Disability Retirement to be improperly computed . . ., the Plaintiff's Federal Employee's Health Benefits to be improperly computed, and the Plaintiff[] to suffer financial loss, physical pain, great emotional distress, and thereby compounding his disability which [was] caused by his service to the Department of Homeland Security."))

6.      The defendant filed a motion to dismiss on April 1, 2009. (Doc. 7) According to the defendant, this Court lacks subject-matter jurisdiction. (*Id.*) It is the defendant's position that judicial review of federal personnel matters and/or decisions of the Merit Systems Protection Board lies exclusively with the United States Court of Appeals for the Federal Circuit. (*See* Doc. 8, at 3-5)

7.      Plaintiff filed his response on May 11, 2009. (Docs. 13-14)

Plaintiff believes that the Court should take this action because the Court does in fact have jurisdiction in this matter. Plaintiff is of this belief because when Defendant's agents (the signatory officials of the Department of Homeland Security) placed their signatures on the Settlement Agreement the matter ceased being a personnel matter and became a contract between Plaintiff and

Defendant. These individuals (Agents and or Employees of the Defendant) knew this fact (contract) at the time they placed their signatures thereon and to renege, almost two years after the fact, is not only wrong but represents an absolute inequity.

It should be noted that the Civil Service Reform Act references current federal employees and the Defendant's citations reference current Federal Employees, limited status employees, employees who resigned, employees who committed criminal acts, and or former employees who are seeking contract enforcement, and their filings. Plaintiff ceased being an employee of the Defendant, and being effected by that status, at the finalization of said contract (Settlement Agreement). Plaintiff's sole status is now Citizen of the United States of America. Additionally, Plaintiff is not seeking to enforce said contract but to void/nullify same due to Defendant's failure to perform and such monetary amounts that reside within the elements of his complaint.

The United States District Court, Southern District of Alabama, exercises jurisdiction over contractual matters between the Government of the United States of America and Citizens of the United States of America who reside within the geographical area covered by the Court. Plaintiff is a US Citizen who resides in Mobile County, Alabama, and, as such, did enter into a contract with the Department of Homeland Security (Defendant). In this contract Plaintiff performed and defendant did not. The cited provisions of Rule 12 simply do not apply.

(Doc. 13, at 1-2 (internal citation omitted); *see also* Doc. 14, at 1 & 2-3 ("The

Settlement Agreement [], a contract between Plaintiff and Defendant, was not

before the Arbitrator nor is it the same as if it were before the Merit Systems

Protection Board.[1] It served to withdraw the personnel matters of the grievance and resultant arbitration[.] . . . [I]n and by the Defendant's own words (and signatures thereon) the grievance (and resultant arbitration), both personnel matters, were withdrawn and terminated at the issuance of the Settlement Agreement (contract). This nullifies all citations in reference to personnel matters by the fact that said personnel matters ceased to exist when the Defendant knowingly entered into the contract. [] The instant matter is not one of enforcement but one of voidance/nullification due to lack of performance. Plaintiff believes that Defendant never intended to perform because this matter is almost two years old and, in spite of having numerous methods in which to contact the Plaintiff, Defendant has made no contact with him in attempt, effort, and or offer to perform."))

## <u>CONCLUSIONS OF LAW</u>

1. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) (internal citations omitted); *see also Williams v. CNH America, LLC,* 542

---

[1]    Plaintiff's request that this Court "exclude the Arbitration document and the MSPB document from these proceedings" (Doc. 14, at 11) is **DENIED**.

F.Supp.2d 1261, 1263 (M.D. Ala. 2008) (same). Because federal courts are courts of limited jurisdiction "[i]t is . . . presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen, supra*, 511 U.S. at 377, 114 S.Ct. at 1675 (internal citations omitted). Plaintiff did not assert in his complaint a basis for this Court to exercise subject-matter jurisdiction (*see* Doc. 1) and such failure cannot be forgiven by a court simply based upon his *pro se* status. *Pryor v. United States*, 85 Fed.Cl. 97, 103 (Fed. Cl. 2008) ("[T]he leniency afforded *pro se* litigants with respect to mere formalities does not relieve them of the burden to meet jurisdictional requirements."); *see also Berry v. United States*, 2009 WL 1220573, *2 (Fed. Cl. 2009) ("[W]hile courts hold *pro se* plaintiffs' pleadings to 'less stringent standards than formal pleadings drafted by lawyers,' . . . 'they are not exempt from meeting jurisdictional requirements.'").[2]  "If a complaint fails to state grounds for subject matter jurisdiction the court may dismiss the [complaint] for lack of subject matter jurisdiction." *Yeager v. Norwest Multifamily, Inc.,* 865 F.Supp. 768, 769 (M.D. Ala. 1994), citing Fed.R.Civ.P. 12(b)(1).

      2.     While Baker attempts to remedy the shortcomings of his

---

[2]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

complaint in his response to the motion to dismiss, he still does not explicitly state upon which jurisdictional vehicle he is relying to sue the Department of Homeland Security in this Court. (*See* Doc. 13) The undersigned reads the language used by plaintiff in his response, as well certain language in his complaint, to contain the implicit argument that this Court may exercise diversity jurisdiction[3] over this matter. (Doc. 13, at 2 ("The United States District Court, Southern District of Alabama, exercises jurisdiction over contractual matters between the Government of the United States of America and Citizens of the United States of America who reside within the geographical area covered by the Court. Plaintiff is a US Citizen who resides in Mobile County, Alabama, and, as such, did enter into a contract with the Department of Homeland Security (Defendant). In this contract Plaintiff performed and defendant did not.");[4] *see also* Doc. 1, at 1 ("This matter falls

---

[3]      "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– [] citizens of different States; [] citizens of a State and citizens or subjects of a foreign state; [] citizens of different States and in which citizens or subjects of a foreign state are additional parties; and [] a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States." 28 U.S.C. § 1332(a)(1)-(4).

[4]      Plaintiff's response can be read in no other way but to suggest that it is his position in this litigation that the Civil Service Reform Act has no application (Doc. 13, at 2; *see* Doc. 1 (no mention of Civil Service Reform Act)); therefore, based upon plaintiff's allegations, federal question jurisdiction does not exist. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

17

within the jurisdiction of the United States District Court in and for the Southern District of Alabama due to the facts that (1) the Plaintiff is a citizen of the United States (2) who resides in Mobile County, Alabama, and that (3) the Defendant is an Agency of the United States of America.")) However, an agency of the United States, such as the Department of Homeland Security, is not a citizen of a state or of a foreign state for purposes of diversity jurisdiction and, therefore, cannot be sued in diversity alone. *See, e.g., General Railway Signal Co. v. Corcoran*, 921 F.2d 700, 703 (7th Cir. 1991) ("U.S. agencies cannot be sued in diversity[.]"); *Evans v. Federal Bureau of Investigations*, 2006 WL 618304, *3 (E.D. Cal. 2006) ("Defendant, an agency of the United States, is not a citizen of a state or of a foreign state. . . . The court does not have diversity jurisdiction."); *Hobby v. Mulhern*, 2005 WL 2739010, *3 (D. Ariz. 2005) ("[A]n agency of the United States [is not] a citizen of any particular state for diversity purposes. . . . Thus, a federal agency may not be sued on the basis of diversity alone."). While this conclusion warrants summary dismissal of plaintiff's complaint based on a facial lack of subject-matter jurisdiction, the undersigned nevertheless continues with the jurisdictional analysis inasmuch as the defendant is correct regarding the applicability of the Civil Service Reform Act.

3.      "The Civil Service Reform Act (5 U.S.C. § 1101 et seq.) (CSRA) . . . provides a 'comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions.'" *Richards v. Kiernan*, 461 F.3d 880, 883 (7th Cir. 2006) (citation omitted); *see also United States v. Fausto*, 484 U.S. 439, 455, 108 S.Ct. 668, 677, 98 L.Ed.2d 830 (1988) ("The CSRA established a comprehensive system for reviewing personnel action taken against federal employees."); *Bobula v. United States Department of Justice*, 970 F.2d 854, 857 (Fed.Cir. 1992) (citations omitted) ("The CSRA was intended to be a comprehensive and exclusive scheme to govern federal personnel matters."); *Stephens v. Department of Health & Human Services,* 901 F.2d 1571, 1576 (11th Cir.) ("'[T]he comprehensive nature of the . . . CSRA indicates a clear congressional intent to permit federal court review as provided in the CSRA, or not at all.'"), *cert. denied*, 498 U.S. 998, 111 S.Ct. 555, 112 L.Ed.2d 562 and *cert. denied sub nom. Stephens v. Coleman*, 498 U.S. 998, 111 S.Ct. 555, 112 L.Ed.2d 562 (1990). Indeed, "[b]y creating the CSRA, Congress implicitly repealed the jurisdiction of federal district courts over personnel actions arising out of federal employment." *Richards, supra* (citation omitted).

4.      There can be no doubt but that in this case plaintiff was a federal

employee covered by the CSRA. (*See* Doc. 8)[5] Accordingly, "the only avenues for relief in personnel matters covered by the CSRA are those provided for in the CSRA." *Kappler v. West*, 954 F.Supp. 262, 263 (S.D. Ga.), *aff'd*, 101 F.3d 710 (11th Cir. 1996). This is the case even where the parties have entered into a settlement agreement. *See Bobula, supra,* 970 F.2d at 858 ("Since the CSRA is an integrated scheme, and since the settlement agreement arose from this integrated scheme, the settlement agreement must be enforced within the procedures provided for in the CSRA or not at all."); *Schooling v. United States*, 63 Fed. Cl. 204 (Fed. Cl. 2004); *Kappler, supra*, 954 F.Supp. at 262 & 263 ("Defendant filed the present Motion to Dismiss the Complaint on the ground that the Court lacks subject matter jurisdiction over the matter. . . . Plaintiff seeks to have this Court enforce a Settlement Agreement reached between Plaintiff and the Department of the Army on August 21, 1992. The Settlement Agreement concerns a dispute relating to Plaintiff's personnel grievances with the Department of the Army. . . . [T]he only avenues for relief

---

[5]        Plaintiff's argument that he ceased being a federal employee covered by the Civil Service Reform Act when he entered into the Settlement Agreement (Doc. 13) is circular since he seeks as damages certain elements he would only be entitled to receive by virtue of the fact that he is a covered employee (*see* Doc. 1, at 3 ("All pay, benefits, allowances, and possible promotions he could have received from November 4, 2004 through present date[.]")). Moreover, as previously explained, if plaintiff is correct that the CSRA is inapplicable then this Court still is without subject-matter jurisdiction since the law is clear that a federal agency, like the Department of Homeland Security, cannot be sued on the basis of diversity alone.

in personnel matters covered by the CSRA are those provided for in the CSRA.").

5.      As applicable in this case, the CSRA provides, in relevant part, as follows: "In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of an arbitrator in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." 5 U.S.C. § 7121(f). Section 7512 lists the actions covered by the subtitle, more specifically, removal and a suspension of more than 14 days. 5 U.S.C. § 7512(1) & (2). Here, of course, plaintiff's removal was mitigated to a 15-day suspension by the arbitrator. (*See* Doc. 8, Exhibit 1, at 53 ("Based on all of the above considerations and findings, the Arbitrator concludes that the removal action constituted harmful error, within the meaning of Article 30, Section 10, and 5 U.S.C. 7701(c)(2), that the penalty of removal has not been demonstrated to have been reasonable or in the interest of the efficiency of the Federal service and that, therefore, the removal penalty must be rescinded by the Agency, with a 15-day disciplinary suspension issued instead for the misconduct which has been found to have

been demonstrated.")) Therefore, Baker and the defendant were entitled to the following appellate rights: "Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board [/Arbitrator] shall be filed in the United States Court of Appeals for the Federal Circuit." 5 U.S.C. § 7703(b)(1); *see also Schooling, supra,* 63 Fed.Cl. at 206 ("Congress provided for judicial review of employee suspensions under the CSRA through the Merit Systems Protection Board[], final decisions of which may be appealed to the United States Court of Appeals for the Federal Circuit."); *see Kappler, supra*, 954 F.Supp. at 263 ("Any petition to review a final order or decision of the MSPB, however, must be filed in the Court of Claims or a United States Court of Appeals. 5 U.S.C. § 7703(b)(1).").[6] Because the CSRA does not provide for judicial review by this Court, or any other district court in the country, Baker "cannot seek enforcement of a Settlement Agreement arising out of a personnel grievance under the CSRA in this Court." *Kappler,* 954 F.Supp. at 263.[7] Accordingly, his complaint is due

---

[6]     As reflected hereinabove, § 7703(b)(1) has now been modified to provide for judicial review only in the United States Court of Appeals for the Federal Circuit.

[7]     While plaintiff attempts to argue that he is not seeking enforcement of the settlement agreement but, instead, nullification of same (Doc. 14, at 3; *see also* Doc. 1, at 3), his reasoning further supports this Court's lack of jurisdiction because any finding in his favor in this regard would place him back in the position he occupied prior to the execution of the settlement agreement, that is, before the arbitrator with a finding that his removal should be mitigated to a 15-day suspension.

to be dismissed with prejudice because this Court lacks subject-matter jurisdiction.

6.    This decision makes sense and does not leave plaintiff without a remedy. Instead, as reflected by the January 6, 2009 decision of the Merit Systems Protection Board, Baker can re-file an appeal with the MSPB (by July 6, 2009) should he be unsuccessful in his attempts to have DHS amend his IRR. (*See* Doc. 8, Exhibit 2, at 3 ("An amendment of the appellant's IRR to reflect his reinstatement for the period of November 4, 2004, through June 24, 2007, would likely have a significant impact on OPM's calculations regarding the overpayment the appellant received.")) Should the Board then deny Baker's appeal, he can then file a petition for review with the Court of Appeals for the Federal Circuit (*see id*.), the very Court which need entertain Baker's claims.

## <u>CONCLUSION</u>

The Magistrate Judge recommends that the defendant's motion to dismiss (Doc. 7) be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE** as this Court lacks subject-matter jurisdiction.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 26th day of May, 2009.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

  s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE